The following view of the creation, powers and prerogatives of the court of pardons of New Jersey, with historical, constitutional, statutory and case law relating thereto, has been written at the request of the governor and other members of the court, in the hope and expectation that it may prove useful, not only to the court itself, but also to the bar when questions may hereafter arise concerning the power and prerogatives of this tribunal of mercy. *Page 557 
The court of pardons is in no judical sense a court, and is not called a court in the constitution. It was first so named by an act of the legislature approved January 18th, 1853. See Cook v.Freeholders of Middlesex (Supreme Court, per Mr. JusticeVredenburgh), 26 N.J. Law 326 (at p. 349). This case very comprehensively deals with the pardoning power. There were two separate opinions in the supreme court, one by Chief-Justice Green and the other by Mr. Justice Vredenburgh, and the opinion in the court of errors and appeals was by Mr. Justice Elmer.27 N.J. Law 637. The case will, for the sake of brevity, be hereinafter cited as Cook v. Freeholders.
The present act relative to the court of pardons (Comp. Stat.p. 3895 § 1) provides that the officers of this state, in whom the power to remit fines and forfeitures and to grant pardons is vested by the constitution, shall be called the court ofpardons. The name is quite appropriate, but if it had not been bestowed by legislative fiat, the body vested with the pardoning power might be called the board of pardons, or by some other designation. It must, of course, have a name.
The constitution of 1844 created and defines the powers of the court of pardons, as follows (Art. 5 ¶ 10):
"The governor, or person administering the government, the chancellor, and the six judges of the court of errors and appeals, or a major part of them, of whom the governor, or person administering the government, shall be one, may remit fines and forfeitures and grant pardons, after conviction, in all cases except impeachment."
And the constitution, in Art. 2 ¶ 1, granting the right of suffrage, provides that —
"No * * * person convicted of a crime which now excludes him from being a witness, unless pardoned or restored by law to the right of suffrage, shall enjoy the right of an elector."
As will hereafter appear, the provision concerning restoration to the right of suffrage is a prerogative of the court of pardons, although not so expressed in terms.
The crimes which at the time of the adoption of the constitution *Page 558 
of 1844 excluded the convict from being a witness, and, therefore, excluded him from enjoying the right of an elector, were blasphemy, treason, murder, piracy, arson, rape, sodomy,polygamy, robbery, conspiracy, forgery, or larceny of above thevalue of $6, perjury or subornation of perjury, and conviction of any one of which still excludes the convict from enjoyment of the right of suffrage.
The pardoning power appears always to have been an attribute of sovereignty. In England, as is well known, the king is the fountain of mercy. The granting of the king's most gracious pardon is the most amiable prerogative of the crown. 4 Bl. Com.396. A pardon may be conditional. The king may extend his mercy upon what terms he pleases. Ibid. 401. The effect of the pardon is to make the offender a new man, to acquit him of all forfeitures annexed to that offense for which he obtains his pardon, not so much to restore his former, as to give him a new, credit and capacity. Ibid. 402. If pleaded in bar before trial it destroys the end and purpose of the indictment by remitting that punishment which the prosecution is calculated to inflict.Ibid. 337. After indictment it could be pleaded in bar of the prosecution or in arrest of judgment before sentence passed.Ibid. But in our state a pardon cannot be granted before conviction. And, doubtless, the reason that our constitution made provision that a pardon, or remission of penalties, could be granted only after conviction, was to prevent the arbitrary favor of warding off the prosecution in any case, as incompatible with the genius of our institutions.
In this state and country the pardoning power is, and always has been, a prerogative of the executive department. In this state it is expressly bestowed in article 5 of the constitution relating to the executive department. And article 3, paragraph 1, declares that no person or persons belonging to or constituting that department shall exercise any of the powers belonging to either of the others. Cook v. Freeholders (Supreme Court),26 N.J. Law 326 (at p. 338), per Vredenburgh, J. And it also provides that no person or persons *Page 559 
belonging to or constituting either of the other departments shall exercise any of the powers properly belonging to it. InClifford v. Heller, 63 N.J. Law 105 (at p. 113), the supreme court said that the powers of government were wisely distributed by the constitution of 1844, in which a member of one department canont exercise the powers belonging to either of the others (except in the instances where the office of governor becomes vacant, the president of the senate, and after him the speaker of the house of assembly, succeed to the administration of the government and the power to reprieve convicts).
The power of pardoning as lodged in our federal and state executives holds the same position in our framework of government as the royal prerogative of pardon does in the English, but limited and diluted by a jealousy of that prerogative. Our court of pardons represents, not the parliament, but the king and his privy counsel. Cook v. Freeholders (Supreme Court, perJustice Vredenburgh), 26 N.J.L. 340. Ergo, it is a kingly, and not a parliamentary, power — that is, one vested in the executive and not in the legislature. I confess that, after a somewhat extended research, I am unable to find any learning in the books to the effect that the privy council shared in the prerogative of mercy or were ever consulted by the king with reference to the propriety of a pardon. It may be, however, that the king occasionally asked the advice of the council in these matters. The duty, says Blackstone, of a privy councilor, appears from the oath which he took, consisting of seven articles, one of which was to advise the king according to the best of his cunning and discretion. 1 Bl. Com. 230. It may be that in the exercise of this power the council, on the request of the king, sometimes advised him respecting a pardon, but I have been unable to find any reported instance of it, and it would seem that the exercise of the prerogative of mercy was exclusively the king's own, for Blackstone, speaking of it says: And it is declared in parliament by statute (27 Hen. VIII c. 24), that no other person hath power to pardon or remit any treason or felonies whatsoever; but that the king hath the whole and sole *Page 560 
power thereof united and knit to the imperial crown of this realm." 4 Ibid. 397. It is significant that Blackstone makes no mention of the privy council in connection with the prerogative of pardon.
In Ex parte Garland, 4 Wall. 380; 18 Law ed. 366, the supreme court of the United States, dealing with the pardoning power vested in the president by the federal constitution, said (at p.371), that the benign prerogative of mercy reposed in him cannot be fettered by any legisaltive restrictions. And in Ex parteUnited States, 242 U.S. 27; 61 Law ed. 129, the same court held that the constitution assigns to the legislature the power to enact laws defining crimes and fixing the degree and method of punishment; to the judiciary the power to try offenses under those laws and impose punishment within the limits and according to the methods therein provided; to the executive the power to relieve from the punishment so fixed by law and so judicially ascertained and imposed. And again (at p. 42) that the right to relieve from punishment belongs to the executive department.
Some question has been made as to whether the constitutional provision creating the court of pardons requires a majority of the members of the court, including the governor, or person administering the government, to act affirmatively upon an application for clemency, it being suggested that maybe a majority of a quorum acting in the affirmative, the executive being one, could exercise the power of the court. But as to this, I think, there is no difficulty.
In Clifford v. Heller, supra, 63 N.J. Law 105, Mr. Justice Van Syckel, writing the opinion of the supreme court, said (atp. 117): "By the constitution of 1844 the executive, with the concurrence of the chancellor and of the six judges of the court of appeals, or a major part of them, may grant pardons after conviction." Art. 5 ¶ 10. To the same effect are the remarks of Chief-Justice Green in Cook v. Freeholders, supra
(Supreme Court), 26 N.J. Law 326 (at p. 327); also those of Mr. Justice Elmer (court of errors and appeals), S.C.,27 N.J. Law 637 (at p. 639). Although it is not a point expressly decided, but only observed *Page 561 
upon, it is apparent that the judges were of opinion that a decision could only be made by the votes of a majority of the members of the court in favor of clemency, including the governor, or person administering the government, and this precludes the notion that clemency can be extended by the votes of a majority only of a quorum of the judges of the court, even with the concurrence of the executive.
The power of granting pardons includes the power of remitting any part of the penalty. A part of the sentence may be remitted without pardon, but the criminal cannot be pardoned without the remitting of the penalty. The constitution of the United States vests in the president the power of pardoning without any specific grant of power to remit fines and forfeitures, yet the power of remitting fines and forfeitures is constantly exercised by the president without question. So, also, the ancient constitution of this state simply conferred the power of pardon, but it was always construed to include the power to discharge from fine and imprisonment. The general power of pardoning offenses necessarily includes the lesser power of remission and commutation. If the whole offense may be pardoned, a fortiori, a part of the punishment may be remitted or the sentence commuted. Cook v. Freeholders (Supreme Court, perChief-Justice Green), 26 N.J. Law 329, 330. If a man be convicted for manslaughter the king may pardon the burning in the hand. Com. Dig. 171. After the conviction of Lord Stafford for treason King Charles II remitted the hanging and quartering part of his sentence of death, but the sheriffs of London expressed doubt as to the king's power thus to commute the sentence, which doubt was proposed in the houses of parliament and was seconded in the commons by Lord William Russell. Both the lords and commons rejected the doubt. Hume's Hist. of Eng. ch. 68. Later, when Lord Russell was himself convicted of treason, King Charles II likewise remitted the more ignominious part of the sentence, namely, the mutilation, saying: "Lord Russell shall find that I am possessed of that prerogative which in the case of Lord Stafford he thought proper to deny me." Idem. ch. 69. *Page 562 
The design of the present constitution was by express terms to confer the power of remitting part or the whole of the penalties consequent on conviction, of granting partial or a full pardon.Cook v. Freeholders (Supreme Court, per Chief-JusticeGreen), 26 N.J. Law 330.
If pardons were granted upon the idea of the innocence of the party pardoned there would be manifest justice in returning the fine not only, but also in making full indemnity for all the injuries sustained by reason of the conviction. If there be no guilt there is no ground for forgiveness. It is an appeal to executive clemency. It is asked as a matter of favor to the guilty, it is granted not of right but of grace. A party is acquitted on the ground of innocence, he is pardoned through favor. Ibid. 331.
To remit a fine after conviction was not strictly the exercise of the pardoning power; it operated only on the punishment — the unforgiven crime remained. Ibid. 341. It was what its language imports, namely, a remission of a penalty dissociated from the pardon of an offense, yet it was exercised only by the pardoning power.
There is no question but that a pardon restores the right of suffrage to a person convicted of a crime which at the time of the adoption of the constitution of 1844 excluded the convict from being a witness. And the question has arisen, What is the meaning of the word "law" in the clause "restored by law to the right of suffrage," and what is its application?
The general power of pardoning offenders necessarily includes the lesser power of remission and commutation. And the costs of the prosecution may also be remitted to the offender. Cook v.Freeholders (Supreme Court, per Chief-Justice Green),26 N.J. Law 333, 334. And it is the doctrine that the power to pardon includes the power to remit part of the penalty without fully pardoning, that permits the court of pardons to commute sentences, there being no express words granting power to commute anywhere bestowed upon it by the organic law. In this case ofCook v. Freeholders, 27 N.J. Law 637 (at p. 641), the court of errors and appeals observed: "There is, however, no reason to suppose *Page 563 
that if the phrase to remit fines and forfeitures be restricted to its proper meaning, to forgive the sentence or judgment inflicting such fine or forfeiture, it was introduced without a purpose. The constitution of 1776, hastily adopted in the midst of the war of the Revolution, used the words `the power of pardoning criminals after condemnation in all cases of treason, felony or other offenses.' While it cannot be doubted that, by virtue of this power, a fine to which a person condemned in a case of treason, felony or other offense, was liable, might be remitted, it was at least doubtful whether a fine imposed for a contempt, or a forfeiture of a recognizance or other forfeiture, incurred by a person not condemned for a criminal offense, could be. To put an end to such doubts, and to make the case perfectly clear, the pardoning power was very properly defined, as we now have it, by the adoption of the words of known import, about the meaning of which there could be no reasonable doubt."
It will be observed that our court of last resort here, in effect, says that the phrase "to remit fines and forfeitures" should be restricted to its proper meaning, to forgive so muchof the sentence or judgment as inflicts such fine or forfeiture, and, also, that it is meant to remove any doubt as to power to remit fines or forfeitures not imposed as an incident to conviction of crime. Observe, too, that the court of errors and appeals (S.C., 27 N.J. Law, bottom of p. 640, top of p. 641) also says that it is clear that the power of granting pardons includes the power of remitting or pardoning any part of the penalty. Now, as the power to pardon includes the power to remit a forfeiture, which, in turn, clearly must include the remission of a forfeiture of the right of suffrage (the loss of which is a part of the penalty of the conviction), then, when the constitution provided in article 2, paragraph 1, that a person convicted of a certain crime shall not enjoy the right of an elector unless pardoned or restored by law to the right of suffrage, the restoration by law undoubtedly meant the granting by the pardoning power of the gracious act of remitting the forfeiture of the right of suffrage to the end that that right might be thereby restored without the *Page 564 
pardoning of the offense or remitting any of the other penalties incident to the conviction. In other words, a remitting of the forfeiture of the right of being an elector because of conviction of a certain crime would work a restoration to the right of suffrage, and this "by-law."
It has been suggested that the words "restored by law" mean by act of the legislature, but, obviously, this is not so. The legal meaning or definition of the word law is not restricted to that of a statute. Blackstone's familiar definition is, that law signifies a rule of action. 1 Bl. Com. 38. One definition is: A rule or method of action or order of sequence. Another: A general rule of external human action enforced by a sovereign political authority. 2 Bouv. L. Dict. (Rawle's Rev.) 144. When, therefore, the constitution says, "Unless pardoned or restored by law to the right of suffrage,' it could not have meant by "restored by law," that such restoration should be by "act of the legislature," as that is not expressed, and there is nothing in the phrase, or the context where it is found, to indicate any such idea; and to attribute such meaning to it would necessarily be to conclude that the constitution makers who bestowed the pardoning power on the executive department (the governor and certain officials acting with him), and provided that no person belonging to any of the departments of the government should exercise any of the power properly belonging to either of the others, deliberately intended, notwithstanding such inhibition, that the legislature might, nevertheless, encroach upon the prerogative of the executive in the exercise of the pardoning power by remitting a forfeiture, a thing expressly reserved to the executive department. The meaning undoubtedly was, "unless pardoned or restored by the court of pardons by remission of the penalty of loss of suffrage," which would be a lawful restoration, and, therefore, a restoration by law, for the deprivation of the right of suffrage following the commission of certain crimes, was certainly the forfeiture of that right, and the power to "remit fines and forfeitures and grant pardons" is in the same organic law as the provision for the deprivation and restoration of the right of suffrage, *Page 565 
and, therefore, the two provisions must be construed together, and being so read would amount to a provision, such as above stated, namely, unless pardoned or unless restored by the court of pardons to the right of suffrage through the medium of a remission of the forfeiture. It would be singular, indeed, if the constitution makers of 1844 intended for the first time in the history of New Jersey as a colony and as a state, to bestow upon the legislature any part of the pardoning power by the use of the ambiguous word "law" and nothing more, when, if the intention were to bestow the power upon the legislature, it could have easily expressed that meaning by naming the legislature; and, moreover, the jurisdiction would undoubtedly have been conferred in and by article 4, concerning the legislature and its powers, where, significantly, it does not appear. It is worthy of note that in article 2, paragraph 1, concerning the right of suffrage, this power of restoration of convicts to the right of suffrage is merely provided for, without reference to the repository of the power of restoration, and we have to look elsewhere in the instrument for that. Now, as stated, nothing is to be found under article 4 concerning the legislature, but only in article 5, paragraph 10, concerning the executive, wherein it is provided that the governor and the other officers associated with him, may remit fines and forfeitures, including necessarily forfeitures of the right of suffrage incident to the commission of certain crimes, and this, because nowhere else in the constitution is any power bestowed to remit the forfeiture of the right of being an elector. It therefore exists exclusively in the court of pardons.
Therefore, upon principle and the authorities, supra, we are to conclude that the power to pardon carries with it power to grant a limited or partial pardon, among others the power to remit part of the penalties consequent on a conviction, and that that power our constitution (1844) by express terms conferred upon the executive department. This grant of power was declaratory of existing law, a thing constantly met with in constitutions and statutes. And surely a power in the *Page 566 
legislature to grant a limited pardon by restoring a convict to the right of suffrage (a prerogative inhering in the court of pardons, to be exercised by the remission of the penalty), cannot be implied on any doubtful construction of an ambiguous word or phrase in the constitution.
Restored by law? Obviously, if there were any power to restore at the time of the adoption of the constitution — that is the lawful restoration that was meant, and there was such power, namely, to grant a partial pardon — that is, remitting the forfeiture of the right of an elector. And that resided in the pardoning power, and was the granting of a partial or limited pardon.
In Ex parte Garland, 4 Wall. (71 U.S.) 333;18 Law Ed. 366, the petitioner moved for leave to practice as an attorney and counsellor of the supreme court of the United States. He was opposed on the ground that by act of congress it was provided that no person be permitted to practice in the supreme, circuit or district courts of the United States, unless he took an oath, the effect of which was that he had not participated in the Rebellion. Mr. Garland was unable to take this oath and pleaded a full pardon from the president of the United States for his offense of rebellion, and insisted that the act of congress as it affected his status in court was unconstitutional and void, and that if it were constitutional he was released from compliance with its provisions by the pardon of the president. And it was held by the court, Mr. Justice Field writing the opinion (18 Law Ed. 371), that the power of the president is not subject to legislative control; that congress can neither limit the effect of his pardon nor exclude from its exercise any class of offenders; that the benign prerogative of mercy reposing in him cannot be fettered by any legislative restrictions.
The principle announced in Ex parte Garland is entirely apposite here. It is to the effect that the pardoning power of the executive cannot be affected by the legislature, in other words, that it can in nowise be shared by the legislature, that the legislature cannot appropriate any of the prerogatives to itself. *Page 567 
It is true that in England parliament sometimes legislated with reference to pardons (4 Bl. Com. 401), but it must be remembered that in England they have no written constitution, and that any statute which receives the royal assent at once becomes the law of the land and part of the constitution. But in our state, as above observed, the pardoning power is by the constitution committed to the executive deparment of the government, and, as seen, a member of one department (legislative, executive or judicial), cannot exercise any of the powers properly belonging to either of the others. Therefore, under our law, as well as the federal law, as decided in theGarland Case, the pardoning power is strictly executive.
Now, there has grown up in this court a practice of granting a full pardon to every applicant for restoration to the right of suffrage. There is but one printed form of application for clemency, which is obtainable on request from the pardon clerk, and it provides inter alia, "Appealing to your honorable court for clemency, your petitioner [the convict] prays that * * * your honorable court may find such merit therein as will warrant the granting of [his] application for ." Here follows in parenthesis a line ("State whether parole, remission of fine orrestoration to citizenship is sought.") In the blank folowing the words "application for" is inserted a request forrestoration to citizenship when that alone is sought, and yet, as stated, the court, in granting that request, as a matter of practice, issues to the offender, without any application therefor, and without consideration as to whether he merits it, a full pardon for his offense, which oftentimes, and in most instances, would not be granted, as it is generaly undeserved, and the effect of which is to make the offender a new man, to acquit him of all forfeiture annexed to that offense for which he obtains his pardon, not so much to restore his former, as to give him a new credit and capacity.
Although the case of Cook v. Freeholders, in the supreme court, so far as it speaks of forfeitures apparently treats of them as forfeitures of estate, as in the English law, nevertheless, no such question was before the court. The only *Page 568 
issue in that case was whether a fine which had been paid could, on the pardon of the criminal, be restored to him, and it was held that it could not; that a fine not collected could be remitted, but that if paid it could not be restored.
We are here dealing with the question of forfeiture of the right of suffrage provided for in the constitution of 1844, and, the language of the constitution, not prescribing the kind of forfeiture which might be remitted, but using the word without any limitation or restriction whatever, it can only be rationally held, I think, to include forfeiture of the right of suffrage, as well as any other forfeiture flowing from a conviction of crime. That the term forfeiture is not limited to forfeiture of estate is apparent from the authorities. And the decision of the court of errors and appeals, supra, is clearly an opinion to the effect that the power to remit any forfeiture is expressly conferred upon the court of pardons.
In 26 Corp. Jur. 891, forfeiture is defined, inter alia, as something lost by the commission of a crime; something paid for the expiation of a crime; that which is forfeited or lost by neglect of duty; that which is lost, or the right to which is alienated, by a crime. An act of congress imposes forfeiture ofcitizenship and its rights, as an additional penalty for the crime of desertion. Huber v. Reily, 53 Pa. St. 112. And there is a forfeiture of office. Bergerow v. Parker, 4 Cal.App. 169,174. The claim of the United States on a forfeitedrecognizance is a penalty or forfeiture within the Bankruptcy act. 2 Words Phrases (2d series) 413. A forfeiture means the loss of something as a penalty for doing or omitting to do some certain required act. Hudson v. Shepard, 90 Ill. App. 626,628. Forfeiture, inter alia, is the loss of office, the loss of a corporate franchise or charter, the loss of the right to life as a consequence of commission of some crime to which the law has affixed a capital penalty. Bl. Law Dic. (2d Ed.)512. And our Criminal Procedure act (Comp. Stat. p. 1828 §24) prescribes procedure with reference to forfeited
recognizances of bail. All these authorities go to show that the word forfeiture has a broad and general significance, comprehending *Page 569 
many things, and is not restricted to forfeiture of money, goods and other property.
I am not unmindful of the view expressed by the late Attorney-General Wilson in an opinion to the court of pardons, April 23d 1912, in which he said that "the question presented for determination is whether or not this [parole] act by its terms delegates to a body other than the court of pardons [so called] some part of the pardoning power vested in it by the constitution of this state. If such a result is reached by the operation of the act it would, of course, contravene the organic law," which opinion he concluded as follows: "If there be a forfeiture in consequence of a criminal conviction, that is to say, if a prisoner has been convicted of one of the crimes, which at the time of the adoption of the constitution of 1844 deprived him of the right of being a witness, such a person convicted of one of those enumerated crimes may not exercise the right of suffrage unless such right is restored to him by a pardon or by some remedial statute."
Now, it will be observed that no question was submitted to Mr. Wilson as to how a forfeiture of the right of suffrage could be relieved against, and the Parole act did not attempt to deal with it. It is apparent that the learned attorney-general, in observing that such right might only be restored by a pardon or by some remedial statute, was drawing upon his knowledge of the former custom of such restorations being assumed to be made by act of the legislature, and that he did not rest his view upon an examination of the authorities upon that question, which, had he done so, he would have found to be against the proposition stated by him in his opinion.
As the legislature cannot impair the jurisdiction of a constitutional court either by depriving it of its power or creating a co-ordinate authority to employ it (In re Thompson
(Court of Chancery), 85 N.J. Eq. 221; citing Flanigan v.Guggenheim Smelting Co. (Court of Errors and Appeals),62 N.J. Law 647), so, equally, the legislature, in the absence of clearly expressed devolvement of power by the constitution, and there is none such, cannot appropriate or in anywise impair *Page 570 
the exercise by the court of pardons of any of the powers and prerogatives vested in it by the organic law.
Upon principle and authority, therefore, I am clearly of opinion that the language in article 2, paragraph 1, "restored by law to the right of suffrage," read in conjunction with article 5, paragraph 10, that the governor (and other officers associated with him) "may remit fines and forfeitures," means that the forfeiture of the right of being an elector by reason of conviction of crime, may be remitted by the court of pardons, and that the remission operates as the restoration of the convict to the right of suffrage, dissociated from the granting of a full pardon to accomplish that purpose, and that this right is in nowise shared by the legislature, who cannot, constitutionally, either grant a pardon or restore to citizenship by remitting a penalty, because it cannot exercise any of the prerogatives of the pardoning power.
We come now to a consideration of the parole law and its effect upon the court of pardons, some review of the history of which will be more or less instructive. Of course, the parole law cannot affect the constitutional power of the court of pardons, but, as will hereafter appear, as a parole is not a pardon, the parole power can be and has been bestowed upon another authority. The court of pardons, too, has been by statute authorized to exercise it; but without statutory authority, it has the power, in effect, to grant a parole by bestowing upon a convict a limited pardon — one with such conditions annexed as would make it a virtual parole according to common understanding.
The first statute granting parole and providing for the procedure thereon is contained in the Criminal Procedure act (Revision of 1898). Comp. Stat. p. 1877 § 171. It provided that the principal keeper and board of inspectors of the New Jersey state prison should have the power to establish rules and regulations under which any prisoner who was then or might thereafter be imprisoned under a sentence other than for murder in the first or second degree, manslaughter, sodomy, rape, arson, burglary or robbery, who had not been previously convicted, might be allowed to go on parole outside *Page 571 
of prison, but to remain while on parole in the legal custody of the principal keeper and board. And by section 173 it was provided that it should be lawful for the court of pardons to grant any convict then or thereafter undergoing imprisonment in any of the penal institutions of the state a license to be at large, upon certain terms, c. The next act dealing with the question was a supplement to the Criminal Procedure act. P.L.1911 p. 356. This latter act for the first time provided for maximum and minimum terms of imprisonment, and provided in section 6 that the board of inspectors should have power to establish, with the consent of the governor, needful rules for the purpose of determining the fitness to be at large of any prisoner, and in section 8, that upon the expiration of the minimum term of such prisoners as were deemed to be fit to be at large, the governor or person administering the government approving, and not otherwise, their confinement in the prison should be suspended and they should be set at large on parole, provided that no prisoner penalized with a fine should be set at large until the fine has been paid or remitted by the court of pardons, c. This act contained an express provision that it should not be construed to repeal any statute relating to parole of prisoners by the court of pardons. And this court propounded to the Honorable Edmund Wilson, then attorney-general, the question whether this statute of 1911 (P.L. p. 356) was constitutional. The question presented for determination being, Whether or not by its terms the act delegated to a body other than the court of pardons some part of the pardoning power vested in it by the constitution. The learned attorney-general answered, by an opinion in writing, April 23d 1912, supra, that if such a result were reached by the operation of the act it would, of course, contravene the organic law, and among other things said: "In my opinion, the granting of a pardon and the allowance of a parole are wholly dissimilar, both in theory and operation. A pardon releases the offender from the entire punishment for his offense, and from all the disabilities consequent upon his conviction. * * * Does a *Page 572 
parole such as we are considering have the same sweeping and remedial effect? Does it, after all, in its portent and scope, present those essential features which are characteristic of a pardon? Reference to the act in question will disclose that the parole may be granted by the board of inspectors, the governor approving, and the issuance of the parole is made to depend upon the sound discretion [exercised within the limitations of the act] of the board of inspectors and chief executive of the state. When granted it is certain that the prisoner is still in the legal custody and under the control of the state. It is designed primarily for the benefit of the prisoner. The parole may be revoked for cause, and the prisoner, while at large, is always under the surveillance by the officers of the state. If convicted of another crime during the period of parole, the original sentence must, under terms prescribed in the statute, be served by the prisoner. These and other provisions of the statute, it seems to me, indicate that the prisoner thus liberated is not in the enjoyment of a pardon, but remains under the surveillance, care and constructive custody of the state against which he has offended. It is not even, in my opinion, a conditional pardon. It is a mere prison regulation designed, as I have already said, for the benefit of the offender. The granting of such a parole, I conclude, therefore, is not an exercise of the pardoning power referred to in the constitutional provision above quoted, and, accordingly, the statute under consideration is without vice in so far as it does not involve an attempted delegation of the pardoning power to a body other than the court of pardons." Citing, in support of his opinion, the following authorities: Exparte Garland, supra; United States v. Wilson, 7 Peters 150; 1Bish. Cr. L. (6th Ed) § 914; State, ex rel.Attorney-General, v. Peters, 43 Ohio 629; George v. Lillard
(Court of Appeals of Kentucky), 51 S.W. Rep. 793; People v.Adams, 176 N.Y. 351; People v. Madden, 105 N.Y. Supp. 354;State v. Duff (Supreme Court of Iowa, 1909),122 N.W. Rep. 829; Miller v. State, 149 Ind. 608; Murphy v. Commonwealth,172 Mass. 264; George v. People, 167 Ill. 447. *Page 573 
 In re Marlow, 75 N.J. Law 400, Mr. Justice Swayze, speaking for the supreme court, observed (at p. 404), that the judicial power is exercised by a sentence; that the shortening of the term or change of the place of imprisonment may be left to the managers, and that court saw no constitutional objection on the ground that it interfered with judicial power. Nor did the court think that termination of the sentence by the managers of the state reformatory under the act (P.L. 1901 p. 231), interferes with the prerogatives to grant pardons; that a discharge from imprisonment is not the equivalent of a pardon.
The next act on the subject of parole is P.L. 1914 p. 429, which is an amendment to the Criminal Procedure act,, and provides for a maximum and minimum term of imprisonment, and that the prisoners whose terms are about to expire shall be allowed to appear in person before the board of inspectors, or a committee thereof, who shall seek to determine their fitness to be at large, and making certain regulations as to parole, c.; making further provisions that prisoners penalized with a fine shall not be set at large until fine paid or remitted by the court of pardons, c.
The next act concerning parole is to be found in the act concerning charitable, correctional, reformatory and penal institutions (P.L. 1918 p. 343, 354; amended, as to its title and certain provisions, (P.L. 1919 p. 222,) but not affecting the subject under discussion). This act (P.L. 1918 p. 354) concerning parole provides that the several boards of managers of the correctional institutions classified in the act shall have power to release upon parole such inmates of their respective institutions as they may determine to be eligible therefor, except a person sentenced to death; that the said board shall prescribe by rules the procedure for the granting of parole and the terms and conditions incident thereto; that the legal custody of all prisoners released upon parole shall be vested in the chief executive officer of the institution from which such prisoner is paroled, continuously until final discharge; that no person committed upon a sentence prescribing a definite minimum term shall be released upon parole *Page 574 
by the board of managers until the expiration of such minimum, less any earned commutation thereof, and that a life sentence shall be taken to have a minimum of fifteen years; that in cases of coincident sentences for more than one crime the sentences shall be regarded as consecutive and the total of the minimum periods shall be regarded as determining the minimum term of imprisonment. Another provision was for the revoking of paroles for cause. This act was further amended in 1923 (P.L. p. 256), not, however, changing, but re-enacting, the provisions concerning parole. It, however, contains a provision authorizing the trial court, within six months after judgment, to grant a new trial or resentence the defendant, admitting him to bail pending such new trial or resentence. It also re-enacted the provision that a life sentence shall be taken to have a minimum of fifteen years, thus amending P.L. 1922 p. 96, which made a life sentence what in terms, it was, namely, a sentence for life, by amending the Criminal Procedure act (amendment of 1914, P.L. p.429) by leaving out the provision making a life sentence have a minimum term of fifteen years. And, therefore, the minimum of fifteen years is again the law of life sentences. The changing of this by abolishing the minimum, and thus again making life imprisonment what its terms imply — that is, imprisonment for life, leaving the matter of reducing it to the court of pardons by way of commutation, is a matter of public policy for legislative consideration.
My excuse for writing at such great length is a desire to thoroughly exhaust the subject and deliver an opinion that may be of some value as a work of reference on the subjects treated.
 *Page 1