SILAS COOK *vs.* THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MIDDLESEX.

1. A pardon expressly remitting a fine paid by a person convicted of a crime, will not entitle him to a return of it; the constitution of this state not having given such power to the governor and those acting with him.

2. If the Court of Pardons had the constitutional power to restore a fine that had been paid, the person who had paid it could not, under the existing laws, maintain an action to recover it.

---

In error to the Supreme Court.   The case and the opinions of the judges will be found in 2 *Dutcher* 326.

*W. Pennington* and *P. D. Vroom*, for the plaintiff.

The power of pardoning is different under the existing constitution from what it was previously.   Under the constitution of 1776, unpaid fines were constantly remitted, and rightly.   The words in the new, " to remit fines and forfeitures," were added for some purpose, and can only have full effect by giving to the word remit its original and proper meaning, to send back.   See *Richardson's Dic.*; *Jac. Law Dic.*, " Remitter." The king of England could not pardon a fine which vested in an individual.   But this fine had not vested in anybody.   The county of Middlesex represented the state.   The word restore, or something equivalent, it is admitted, was necessary to give back a fine which had gone into the royal exchequer ; the word remit was not held sufficient.   But our constitution evidently meant to give a different meaning to the word remit, viz., the proper legal meaning of the word.   The committee of the convention in 1844 first reported in the words of the old constitution.   Afterwards it was changed.   This was for some object.   The Court of Pardons remitted this fine long after it had been paid, and knowing the fact.   They are independent of the judiciary, and have a right to interpret the constitution for themselves.   The plaintiff having a right to this money, and the county having no longer a right to retain it, it is money had and received for his use, and debt will lie to recover it.   They referred to 5 *Bac. Ab.* 296, " Pardon," *H ; Hawk. P. C.* 396, § 54 ; 6 *Bac.* " Statute," *I ;* 8 *Blackf.* 229, *State* v. *Farley ;* 10 *Johns.* 232 ; 1 *Kelly* 606, case of *Flournoy ;* 1 *Nott & McCord* 26 ; 2 *Bay.* 565 ; 22 *Pick.* 571 ; 5 *Ind.* 105, *Green* v. *Cheek ; Leam. & Sp.* 153,  160, 382, 391, 397, 652.

*C. Parker* and the *Attorney General* for th · defendants.

A pardon does not have the effect to restore a fine without express words. Pardon is forgiveness, it is not restoration. The word remit, as applied to fines, means only to forgive it. Such has always been the construction. The governor has power to suspend the collection of a fine, and the pardoning power can forgive it, but neither can restore it when once paid; neither has any power over the state or the county treasuries. The king would restore by express words, because the money went into his exchequer. The executive of this state never had the power of restoring a fine once paid. The framers of the constitution of 1844 must be supposed to have known the legal meaning of the words, to remit a fine, and used them in that sense. There is nothing to indicate a contrary meaning.

At any rate, no action will lie against the defendants. They have no money in their hands belonging to the plaintiff; they never received any to his use. If there is any remedy, it is against the state.

Cases referred to, 2 *Bla. Com.* 254; 4 *Bl.* 402; *Com. Dig.*, "*Pardon*," *F* 1; 1 *Saund. R.* 362; 4 *Wash. C. R.* 64; 2 *Bay.* 565; 7 *J. J. Marshall* 645; 13 *Petersdorf Abr.* 80, 82; 2 *Mod.* 52; 5 *Giles* 214; 15 *Ark.* 427; 2 *Leigh* 724; *Whart. Am. C. Law* (4th ed.) 763; 5 *Bar. & Adol.* 354; 2 *Saund. Pl. & Ev.* 673; 1 *East* 103; *Chitty on Con.* 607, *N, a;* 16 *East* 274; *Leam. & Sp.* 5, 651.

The opinion of the court was delivered by

ELMER, J. The most important question in this case is, what was the effect of the pardon granted to the plaintiff; and this involves the construction of the 10th section of article five of the constitution of this state. The governor, the chancellor, and the six judges of the Court of Errors and Appeals, or a major part of them, of whom the governor shall be one, are thereby authorized "to remit fines and forfeitures, and grant pardons after conviction."

Cook v. Freeholders of Middlesex.

In this case it is certified that, at a meeting of those persons, Silas Cook, the present plaintiff, convicted of the crime of rape, received a full and free pardon for the crime of which he was convicted, also that the fine of one thousand dollars, imposed on him for the offence aforesaid, be remitted. The fine having been previously paid to the sheriff of the county of Middlesex, according to the sentence of the court, and by the sheriff paid over to the county collector, and carried to the credit of the county pursuant to law, an action of debt was prosecuted against the defendants to recover back the money.

It is fully established by the authorities, and was admitted on the argument, by the plaintiff's counsel, that a pardon and remission of a fine, granted by the king of England or by the governor and council of this state, previous to the adoption of the present constitution, in the words used in the instrument now in question, would not have operated to restore a fine actually collected. A charter of pardon granted by the crown, simply remitting a fine, did not entitle the offender to restitution after the fine had passed into the royal exchequer. To effect that object, express words importing a restitution were necessary. It thus appears that, before the meeting of the constitutional convention in 1844, the words to remit a fine or forfeiture had a well-established meaning, and were never used to signify more than a discharge or forgiveness of a fine or forfeiture not yet collected. When adopted as a part of the constitution, they must be considered as meant to be used in their proper legal sense, unless there is something in the instrument which indicates a different intention.

The reason most strongly urged by the counsel of the plaintiff for giving these words a different meaning was, that they were not used at all in the constitution of 1776, which gave to the governor and council the power of granting pardons to criminals after condemnation. Under that provision, uncollected fines were frequently remitted, it being clear that the power of granting pardons includes

the power of remitting or pardoning any part of the penalty. Hence it was insisted that the framers of our present constitution must have meant to grant some additional power, not before allowed, when they so carefully added to the general power of pardoning, the express power to remit fines and forfeitures, otherwise these words would be mere tautology. But there is no sound rule of construction which will authorize us to give words an entirely different signification, when applied to the same subject matter, from that which they previously had, merely to avoid tautology. Nothing is more common, in framing laws and constitutions, than, out of abundant caution, to use several words or phrases to express substantially the same idea. There were several eminent lawyers in the convention, well acquainted with the long-established meaning of the phrase to " remit a fine," whose intelligence or caution we must unnecessarily question, if we suppose they used words in any other meaning, without affording us any clew to such a design.

There is, however, no reason to suppose that if the phrase to remit fines and forfeitures be restricted to its proper meaning, to forgive the sentence or judgment inflicting such fine or forfeiture, it was introduced without a purpose. The constitution of 1776, hastily adopted in the midst of the war of the Revolution, used the words, " the power of pardoning criminals after condemnation in all cases of treason, felony, or other offences." While it cannot be doubted that, by virtue of this power, a fine to which a person condemned in a case of treason, felony, or other offence, was liable, might be remitted, it was at least doubtful whether a fine imposed for a contempt, or a forfeiture of a recognizance or other forfeiture, incurred by a person not condemned for a criminal offence, could be. To put an end to such doubts, and to make the case perfectly clear, the pardoning power was very properly defined, as we now have it, by the adoption of words of

known import, about the meaning of which there could be no reasonable doubt.

Besides the power of pardoning provided for by the tenth section of the fifth article of the constitution, the ninth section, which is also in addition to the power in the previous constitution, provides that the governor may suspend the collection of fines and forfeitures, and grant reprieves, to extend until the expiration of a time not exceeding ninety days after conviction.  This power of suspension is evidently given for the purpose of enabling the party incurring the fine to submit his case to the persons having the power to remit it, and would be comparatively unimportant, if they could restore it after it was collected. By the one section, the governor alone, to whom there can be almost immediate access, may suspend the collection of the fine for a given time; and by the other, the governor and those associated with him, when assembled, may altogether remit it, and thus prevent it from being collected.  But no power is given, in terms or by necessary implication, to restore a fine after it had been collected.  The fine, once paid, is like any other punishment inflicted, which was not intended to be repaid or recompensed.  No such power had ever been conferred on the executive, either while New Jersey was a colony or after she became an independent state.

This question depends so entirely on the proper construction of our constitution, that but little aid can be expected from decisions in other states, the constitutions of which are generally more or less variant from ours.  The case of *Flournoy, Attorney-Gen.*, 1 *Kelly* 606, was a good deal relied on; but nothing more was decided in that case, but that the giving of a note for the amount of a fine did not discharge it, (which accords with the case of *Baldwin and others* v. *Scoggin*, 15 *Ark. R.* 427,) and that, as the note remained in the hands of the attorney-general uncollected when the pardon was granted, the court might properly stay the proceedings.  It is true that the reasoning of

Judge Nisbet, who delivered the opinion of the court, goes further, but on the theory that a pardon proceeds on the ground of the ascertained innocence of the offender; so manifestly erroneous, that it was repudiated by the counsel of the plaintiff in this court, and needs no argument to refute it.

As to the suggestions of counsel, that the executive power of pardoning is independent of the judiciary, and has an equal right to interpret the constitution for itself, and that having ordered the fine to be remitted long after it had been paid, the presumption is, that its restoration was intended, it is sufficient to remark that the judiciary has not sought the occasion to interfere. The plaintiff found it necessary to invoke the aid of the courts, and thereby imposed upon them the duty of judicially determining whether the constitution and laws entitled him to it.

If it was admitted that the remission of the fine was intended by the constitution to be equivalent to an order to restore to the offender what he had paid, could this action be maintained against the defendants? This question, we think, must be answered in the negative. No law exists which authorizes it, or requires the county of Middlesex to refund what it properly received, and has properly expended for the public use. The action is founded upon the idea that the defendants are liable in *indebitatus assumpsit* as for money had and received. If any action will lie in such a case as this, it was conceded that is the proper form. But what privity of contract is there between these parties? The plaintiff had no right to the money when he paid it, nor had he any right to it when it was paid out by the collector for public purposes, as it was his duty to do. No part of the money is alleged to be in the hands of the defendants. The most that can be said in regard to their power over it is, that if they think proper, they can impose a tax to raise the sum required. There is no principle upon which money so received and used can

be treated as money received for another. It was insisted that the defendants are the agents of the state, and hold the money in that capacity. If this be admitted, it certainly does not help the plaintiff. Had the money been payable by law to the treasurer of the state, it is not pretended that the state, or its treasurer, could be sued. Giving to the constitutional provision the interpretation desired by the plaintiff, the money could not be reached without the aid of a statute, which in that case it might be the duty of the legislature to provide. Our opinion, however, is that the power to remit a fine, cannot be extended so as to embrace the power to restore it, and that the judgment of the Supreme Court must be affirmed.

*For affirmance*—The CHANCELLOR, and Judges ELMER, POTTS, HAINES, RISLEY, SWAIN and WOOD.

*For reversal*—Judges CORNELISON and VALENTINE.