130 N.J. Super. 21 (1974)
324 A.2d 611
IN THE MATTER OF THE APPLICATION OF "S.S." FOR PERMIT TO CARRY PISTOL OR REVOLVER.
Superior Court of New Jersey, Essex County Court.
July 29, 1974.
*22 Mr. George S. Hochberg for applicant (Messrs. Shapiro, Berson, Hochberg & Reiken, attorneys).
YANOFF, J.C.C.
Applicant applied for a permit to carry a pistol or revolver so that he might be employed as an armed guard for a payroll service. His application showed that he had been convicted in the United States District Court for the District of New Jersey in 1960 for a crime involving embezzlement, sentenced to a term of incarceration, served the term, and that under date of December 21, 1973 he had been granted "a full and unconditional pardon" by the President of the United States. The local chief of police approved his application. Under the provisions of N.J.S.A. 2A:151-44 a county judge is required to approve the application before a permit may issue. I denied in a letter-opinion, after which applicant requested a hearing pursuant to N.J.S.A. 2A:151-44.1. A brief was filed on applicant's behalf and testimony was taken at which applicant produced persuasive evidence of his good character.
No notice of the hearing was given to the local chief of police, or the municipal attorney, and he was not represented *23 at the hearing. A discussion of the procedural problem is necessary. There is a distinction between applications to purchase guns and applications to carry guns. The first is controlled by Article 4 of the Gun Control Law, L. 1966, c. 60; N.J.S.A. 2A:151-1 et seq. The second is controlled by Article 5 of the same statute. Section 34 of the statute controls issuance of permits to purchase a weapon. Under its provisions full power to issue the permit resides in the chief of police where there is an organized full-time police department in a municipality. If he denies, the aggrieved applicant may request a hearing in the County Court. Section 44 of the statute controls permits to carry firearms. In this case, the application is made in the first instance to the chief of police in the municipality in which the applicant resides. However, the ultimate issuing authority rests in the county judge. If the chief of police approves, the application is then presented to the county judge for action. Section 44.1 of the statute controls both the case where the chief of police recommends approval and where he disapproves. It makes specific provision for a hearing if the chief of police disapproves. As to the situation in which the chief of police approves, but the County Court denies the application, it provides only: "* * * then the appeal from the denial of such application by the County Court shall be in accordance with law." Weston v. State, 60 N.J. 36 (1972), dealt with the situation in which there was an appeal from a denial of a permit to purchase a gun. Its comprehensive discussion of the statutory scheme (at 43-44) needs no repetition. It made clear that at some point in the permit-issuing process a judicial hearing was necessary to afford the applicant due process. The problem here is that the statute does not specify the procedure by means of which the applicant's constitutional rights are to be protected. Under the circumstances
The judicial task becomes one of resolving, within the framework of the appropriate canons of construction, the probable legislative intention, bearing in mind the admonition of Chief Justice Weintraub *24 in New Capitol Bar & Grill Corp. v. Div. of Employment Sec. 25 N.J. 155, 160 (1957) that:
"It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end `words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.' Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378 (1956); Wright v. Vogt, 7 N.J. 1, 6 (1951); Glick v. Trustees of Free Public Library, 2 N.J. 579, 584 (1949)." [Dvorkin v. Dover Tp., 29 N.J. 303, at 313 (1959)]
Conceivably, the hearing mandated by Weston could come on appeal to the Appellate Division under R. 2:2-3 (a)(2) "to review final decisions or actions of any state administrative agency or officer * * *." In such case, the Appellate Division would be forced to pass on the matter with only the bare statements in the application for gun permit before it, without findings of fact or even a record upon which to find facts. Conceivably, also, a complaint in lieu of prerogative writs might be filed under R. 4:69. In such case, a plenary action would ensue, whereas the Gun Control Law obviously contemplates summary action. Another possibility is that the assignment judge designate another county judge to hear the appeal. In such case there might result a divergence of policy which the designation of a single "gun judge" is intended to preclude. I have, therefore, concluded that it was the legislative intent that the fact-finding procedure in the situation involved here must be the same as that in which the local chief of police refuses in the first instance to grant the permit. However, where, as here, the chief of police has recommended the grant of the permit, he is no longer an adversary party and need not be joined.
The substantive issue which must be determined for the first time in this State is whether by reason of the conviction applicant is barred from obtaining a permit to carry a firearm pursuant to N.J.S.A. 2A:151-44, despite the pardon. *25 N.J.S.A. 2A:151-44 specifically provides that no permit shall be issued to a person who is precluded by N.J.S.A. 2A:151-33 from purchasing a firearm.
Section 33 provides in pertinent part:
No person of good character and who is of good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a pistol or revolver or a firearms purchaser identification card, except as hereinafter set forth:
a. No pistol or revolver purchase permit or firearms purchaser identification card shall be issued to any person who has ever been convicted of any crime, * * *.

* * * * * * * *
d. To any person where the issuance would not be in the interest of the public health, safety or welfare.
The constitutionality of the statute was sustained in Burton v. Sills, 53 N.J. 86 (1968). General standards under which such permits may be issued were outlined in Reilly v. State, 59 N.J. 559 (1971); Siccardi v. State, 59 N.J. 545 (1971), and In re Application of "X", 59 N.J. 533 (1971). The conclusion to be drawn from these cases is that broad discretionary powers are entrusted to the County Court in the administration of the statute.
The first substantive question is, whether the pardon removes the per se disability set forth in N.J.S.A. 2A:155-33. In United States v. Wilson, 7 Pet. 150, 32 U.S. 150, 160, 8 L.Ed. 640 (1833), Chief Justice Marshall defined a pardon as an act of grace which exempts the individual upon whom it is bestowed from the punishment which the law inflicts for a crime he has committed. In Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366 (1866), the Supreme Court stated that,
A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. * * * if granted after conviction it removes the penalties and disabilities and restores him to all his civil rights; it makes him, *26 as it were, a new man, and gives him a new credit and capacity. [at 380; emphasis added]
On the other hand, in Knote v. United States, 95 U.S. 149, 156, 24 L.Ed. 442 (1877), the court stated that it is the "essence of a pardon that it relieves the offender from the consequences of his offence." See also, Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476 (1915). The distinction between the language of the earlier cases and of the later cases is that the earlier cases seem to view a pardon as completely wiping from the record all aspects of the offense, while the latter cases view it as relieving the offender only from the punishment attendant upon the offense.
It is stated in 67 C.J.S. Pardons § 6, at 571 (1950):
The power of pardoning is founded on considerations of the public good, and is to be exercised on the ground that the public welfare, which is the legitimate object of all punishment will be as well promoted by a suspension as by an execution of the sentence. It may also be used to the end that justice be done. * * *
While this is a generalization, it supplies a background for determination of the issues involved here.
In Cook v. Freeholders of Middlesex, 26 N.J.L. 326 (Sup. Ct. 1857), aff'd 27 N.J.L. 637 (E. & A. 1858), the issue was whether the granting of a pardon entitled the party to restitution of the fine and costs paid. The court held that the fine could not be returned. The Chief Justice stated:
The principle universally propounded is, that pardon is an exercise of sovereign or executive clemency toward the guilty. It is a suspension of the just sentence of the law, induced by the facts and circumstances of the crime or by the character and condition of the criminal. The power of pardoning is founded on considerations of the public good, and is to be exercised on the ground that the public welfare, which is the legitimate object of all punishment, will be as well promoted by a suspension as by an execution of the sentence. If the party convicted be innocent, nothing short of an utter abrogation of the sentence, restitution of all that he has paid, and compensation *27 for all that he has suffered, can fill the measure of justice. Nothing of this sort is contemplated or effected by a pardon. [at 333]
In In re Fitzpatrick, 9 N.J. Super. 511, 517 (Cty. Ct. 1950), aff'd 14 N.J. Super. 213 (App. Div. 1951), the court said, "Pardon is a remission of guilt and a declaration of record by the authorized authority that a particular individual is to be relieved of the legal consequence of a particular crime."
In a full discussion of the pardoning power in New Jersey, Chancellor Walker said in Court of Pardons  In re matter of creation, etc., 3 N.J. Misc. 585 (Ct. Pardons 1925):
There is no question but that a pardon restores the right of suffrage to a person convicted of a crime, which at the time of the adoption of the Constitution of 1844 excluded the convict from being a witness. [at 592]
Thus, I conclude that a pardon removes both the punishment and the disabilities consequent upon the conviction, including the disability to receive a permit to carry a weapon. If a pardon restores the right to suffrage, it similarly restores the right to carry a weapon.
The question remaining is, whether applicant is disqualified under subsection (d) of N.J.S.A. 2A:151-33, which requires that he be a person of "good character."
While a pardon eliminates the consequences of a conviction, it does not blot out the fact of the conviction. Thus, in an article, 28 Harv. L. Rev. 647 (1915), "Does a Pardon Blot Out Guilt?", Professor Williston wrote:
The true line of distinction seems to be this: The pardon removes all legal punishment for the offence. Therefore, if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible. [at 653] *28 It is for that reason that a conviction may be used to impugn the credibility of a witness who has been pardoned. State v. Tansimore, 3 N.J. 516 (1950). In re Spencer, 5 Sawy. U.S. 195, 22 Fed. Cas. (No. 13,234), P. 921 (D. Ore. 1878), supports the distinction made by Professor Williston. Spencer, an alien resident of Oregon, made an application for citizenship. He had been convicted of perjury and later pardoned by the Governor. Citizenship was denied on the ground that the pardon did not eliminate the fact of conviction, and that therefore Spencer had not behaved as a man of "good moral character" as required by the statute. The court (at 923) stated: "The offender is purged of his guilt, and thenceforth he is an innocent man; but the past is not obliterated nor the fact that he had committed the crime wiped out." See also, People ex rel. Prisament v. Brophy, 287 N.Y. 132, 38 NE 2d 468 (Ct. App. 1941) cert. den. 317 U.S. 625, 63 S.Ct. 62, 87 L.Ed. 506 (1942)).
The matter was well summarized in Hozer v. State, etc., Police & Firemen's Pension Fund, 95 N.J. Super. 196 (App. Div. 1967), cert. den. 50 N.J. 285 (1967):
While a pardon may restore to a convicted felon his rights of citizenship and remove all penalties and legal disabilities, it cannot and does not substitute a good reputation for one that is bad; it does not obliterate the fact of the commission of the crime; it does not wash out the moral stain; it involves forgiveness and not forgetfulness and it does not "wipe the slate clean." Stone v. Oklahoma Real Estate Commission, 369 P.2d 642 (Okl. Sup. Ct. 1962). A pardon "does not close the judicial eye to the fact that once he had done an act which constituted the offense." In re Lavine, 2 Cal.2d 324, 41 P.2d 161, 163, 42 P.2d 311, 313 (Sup. Ct. 1935). It does not restore his character and does not obliterate the act itself. [at 202]
The crime for which applicant was convicted was one involving moral turpitude. Can he prove that he is now a man of good character?
The issue in Hozer was, whether the policeman who was convicted of having "unlawfully and unintentionally neglected and omitted to perform his public duties as a police officer" (at 198) was entitled to a pension under a statute *29 which required honorable service (N.J.S.A. 43:16-1). The pension was denied by the appropriate pension fund commission on the ground that his service had not been honorable. On appeal the ruling of the pension commission was affirmed on the ground that the commission properly determined from the facts before it that Hozer's service had not been honorable. The court wrote:
On the record of that hearing the Commission on April 24, 1964 found that "the condition of honorable service was not satisfied" and that appellant "would not be entitled to the service retirement pension." We find that this conclusion was not based automatically upon the formal conviction of the crime but substantially upon the Commission's distinct determination that appellant did not satisfy the condition of "honorable service," although it is implicit in the determination that the conviction was deemed prima facie evidence of the dishonorable service. The hearing record amply supports the finding of dishonorable service. [at 203]
Applying the principle thus enunciated to the case at bar, I conclude that the conviction is prima facie but rebuttable evidence of lack of good and moral character. In this case I am convinced from the circumstances that at the time of the application for the gun permit, Sweigman was a man of good moral character. Over 13 years have passed without dereliction on his part. The witness who testified on his behalf extolled his trustworthiness in the highest terms. In my opinion, possession of a gun by this applicant will not present any danger to the community. Cf. Application of Walter Marvin Jr., 53 N.J. 147 (1969), cert. den. 396 U.S. 821, 90 S.Ct. 62, 24 L.Ed. 72 (1969).