THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellant, *v.* JOHN GLISSON, Petitioner-Appellee.

First District (1st Division)    Nos. 62744-62751 cons.

Opinion filed November 18, 1976.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Renee G. Goldfarb, Assistant State's Attorneys, of counsel), for the People.

James W. Reilley, of Reilley, Bell & Weinberg, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

On September 25, 1942, John Glisson (petitioner) was arrested for contributing to the delinquency of a minor, convicted and sentenced to 30 days in the Cook County Jail. He was subsequently arrested for purposes of investigation and then released without charge on the following dates:

(1) July 16, 1950
(2) October 9, 1951
(3) April 7, 1954
(4) November 8, 1956
(5) September 19, 1957
(6) March 19, 1958
(7) March 23, 1958

He was photographed and his fingerprints were taken by the police on each of these dates. He was not convicted of any offense after the 1942 conviction.

On December 20, 1974, the Governor of Illinois granted petitioner a pardon for the 1942 conviction (Ill. Const. 1970, art. V, §12). The certificate of pardon stated that petitioner was pardoned for:

"CONTRIBUTING to Delinquency of a Minor, * * * of which he stands convicted and he is hereby acquitted and discharged of and from all further imprisonment and restored to all his rights of Citizenship which may have been forfeited by his conviction."

On February 19, 1975, by several verified motions, petitioner requested the circuit court to expunge all arrest records resulting from the original arrest and from his seven subsequent arrests. (Ill. Rev. Stat. 1975, ch. 38, par. 206—5.) The trial court granted the relief prayed in each case regarding the original conviction and all of the arrests which followed. The State has appealed and the several appeals have been consolidated for hearing.

The pertinent portion of the statute regarding expunging of criminal records reads as follows (Ill. Rev. Stat. 1975, ch. 38, par. 206—5):

"All photographs, finger prints [sic] or other records of identification so taken shall, upon the acquittal of a person charged

with the crime, or, upon his being released without being convicted, be returned to him. Whenever a person, not having previously been convicted of any criminal offense or municipal ordinance violation, charged with a violation of a municipal ordinance or a felony or misdemeanor, is acquitted or released without being convicted, the Chief Judge of the circuit wherein the charge was brought, or any judge of that circuit designated by the Chief Judge, may upon verified petition of the defendant order the record of arrest expunged from the official records of the arresting authority."

Each of the orders appealed from, having reference to the original conviction and to all subsequent arrests, provided for expungement of "all of the arrest records" and also for return to petitioner of "all photographs, fingerprints and all other records of identification taken as a result of his being taken into custody" on each of the dates involved.

Examination of the cited statute shows that it consists of two separate sentences. The first pertains to "photographs, finger prints [sic] or other records of identification" and the second provides for expungement of "the record of arrest." It seems clear to us that the first sentence applies to every person who has been arrested and photographed or fingerprinted and then released "without being convicted." In our opinion, this portion of the statute requires return to petitioner of all of the photographs, fingerprints or other records of identification taken on each of the various arrests above detailed commencing July 16, 1950. Consequently, each of the orders before us is affirmed in that regard. We will consider the order pertaining to records of identification in connection with the original arrest on September 25, 1942, and each and all of the orders as they pertain to records of arrest.

In other words, with regard to expunging the records of petitioner's initial arrest and returning to him the various records of identification concerning this arrest, we have the question as to whether as a result of the pardon he can be considered to have been "released without being convicted." Similarly, as regards expungement of the records of the seven later arrests, the issue before us is whether petitioner can be treated as "not having previously been convicted of any criminal offense." (Ill. Rev. Stat. 1975, ch. 38, par. 206—5.) What is the legal effect of the gubernatorial pardon as applied to these two portions of this statute?

In the briefs before us, the State contends that the general purpose of "An Act in relation to criminal identification and investigation," of which the cited statute is a portion, renders the expungement provision of the Act inapplicable to a pardoned convicted offender's arrest records because such provision is clearly addressed to a class of persons to which pardoned convicted offenders do not belong and, also, that the pardon

did not blot out the fact of conviction and was not tantamount to an acquittal since a pardon in itself implies guilt. In response, petitioner in his brief discusses the effect of a pardon and takes the position that the situation of a pardoned offender falls within the statutory language of a person "not having previously been convicted" so that petitioner was eligible to have his arrest records expunged.

There are a number of cases in Illinois dealing with the legal effect of a gubernatorial pardon. For example, in *People v. Rongetti* (1947), 395 Ill. 580, 70 N.E.2d 568, the supreme court considered the effect of a pardon upon the right of a person to engage in a profession which had been forfeited by a prior conviction. The court concluded that the pardon did not prevent forfeiture of the right to obtain a license to practice medicine. In *People ex rel. Symonds v. Gualano* (1970), 124 Ill. App. 2d 208, 260 N.E.2d 284, this court held that a governmental certificate which restored to the defendant all rights of citizenship removed his ineligibility to hold public office which resulted from the Illinois Constitution of 1870, art. IV, §4. However, neither of these cases, nor any other Illinois decision of which we have knowledge, governs the narrow situation before us in which we are required to decide simply and only the effect of the pardon upon the statute above cited.

It has been generally stated that a pardon "removes the penalties and disabilities [resulting from the conviction] and restores him [the defendant] to all his civil rights." (*Ex Parte Garland* (1866), 71 U.S. 333, 380, 18 L. Ed 366.) In analyzing the legal effect of the pardon in the case before us, it is essential to note the language used by this court that a pardon is "a means of encouraging guilty persons to become upstanding citizens of the community and to prove by exemplary conduct that they were worthy of public confidence." *Gualano*, 124 Ill. App. 2d 208, 220.

The State relies upon *Cohen v. Barger* (Comm. Ct. Pa. 1974), 314 A.2d 353. Plaintiff there was granted a full pardon by the Governor of Pennsylvania after he had been found guilty of assault and battery and indecent assault, placed on probation and duly discharged. The court approved refusal by the police to expunge his criminal record. This relief was sought upon the theory that the presence of the record of arrest was unjustified and might be harmful to "his reputation and calling." However, it does not appear that the ruling of the court was predicated upon a statute providing for expungement of arrest records. The court proceeded upon the theory that a Pennsylvania court had previously held that the effect of a pardon was merely to restore the defendant to his civil rights but that the pardon would not obliterate the record of his conviction or blot out the fact that he had been convicted.

Another authority of interest, cited by petitioner, is *Guastello v. Dept. of Liquor Control* (Mo. 1976), 536 S.W.2d 21. There, petitioner had been

convicted on two counts of selling liquor on Sunday and fined. Some 11 years later he was given a full pardon by the Governor and received a license for sale of package liquor. His application for renewal of the license was subsequently denied. The court held that the pardon operated to obliterate the fact of conviction and that it left remaining only the guilt of the defendant. The court also pointed out two additional and differing views regarding the effect of a pardon; one holding that the pardon wipes out and obliterates both the conviction and the guilt and the more extreme view, advanced in *Cohen,* holding that neither the fact of conviction nor the guilt are eliminated by the pardon but only the punishment.

In our opinion, *Guastello* is not directly helpful in disposing of the issue before us but it is an example of the various divergent opinions which have been expressed regarding the effect of a pardon. In this regard, various learned articles may be consulted such as *The Effect Of A Pardon* by Professor Henry Weihofen, 88 U. Pa. L. Rev. 177 (1939) and *Does A Pardon Blot Out Guilt?* by Professor Samuel Williston, 28 Harv. L. Rev. 647 (1915). Also many divergent legal views concerning the precise nature and effect of a pardon are set forth in Annot., 58 A.L.R.3d, 1191 (1974). We need not and will not enter the scholarly debate pertaining to the innumerable effects of a pardon in every conceivable type of situation, but we will limit ourselves to an attempt to resolve the single issue here presented.

Perhaps the closest case to the issue before us is *In re Application for Pistol Permit* (1974), 130 N. J. Super. 21, 324 A.2d 611. There, petitioner was convicted of embezzlement, served a prison term and received an unconditional presidential pardon. The court interpreted a statute providing that no permit to purchase a firearm could be issued to an individual who "has ever been convicted of any crime" (N.J.S.A. 2A: 151—33(a)). The court held that the statutory language did not preclude issuance of such a permit to a pardoned felon because "a pardon removes both the punishment and the disabilities consequent upon the conviction" (130 N.J. Super. 21, 27, 324 A.2d 611, 614). Although this quoted statement is dictum and the New Jersey case involves exercise of a right limited to unconvicted persons rather than expungement of records, the pertinent portion of the statute there involved is quite similar to the Illinois enactment. The New Jersey decision thus is authority in support of affirmance of the judgments before us.

In addition, we must necessarily note that petitioner is subjected to ongoing, onerous and oppressive consequences of his original conviction more than 30 years ago because the police retain his photographs and fingerprints and his arrest records. Defendant was not charged with or convicted of any offense of any kind pursuant to those

subsequent arrests. An individual without any previous conviction who had been repeatedly arrested in this manner would be entitled to have his arrest records expunged and his identification records returned. (Ill. Rev. Stat. 1975, ch. 38, par. 206—5.) To deny defendant that type of relief, despite the fact that he has received a pardon from the Governor, would subject him to a continuing disability due to his conviction and would, in our opinion, conflict with the purpose and effect of a pardon under the law of Illinois as noted above.

Therefore, we hold that for purposes of section 5 of "An Act in relation to criminal identification and investigation" (Ill. Rev. Stat. 1975, ch. 38, par. 206—5), petitioner is to be treated as if he had not been convicted of a crime and that under this statute the pardon operates to obliterate the conviction and to render him eligible to obtain the relief he seeks.

The orders appealed from are each and all affirmed in all respects.

Orders affirmed.

SIMON and O'CONNOR, JR., JJ., concur.