Ulysses A. **LETTSOME**,
Plaintiff/Appellee,

v.

Charles S. **WAGGONER**,
Defendant/Appellant.

Civ. No. 1986/524.

District Court, Virgin Islands,
D. St. Thomas and St. John,
Appellate Division.

Aug. 18, 1987.

Carol Ann Rich (argued), Joseph Bruce Wm Arellano, Law Offices of Campbell & Arellano, James L. Hymes III, Law Offices of James Hymes, III, St. Thomas, U.S.V.I., for defendant/appellant.

Bennett Chan (argued), Law Offices of Desmond L. Maynard, St. Thomas, U.S. V.I., for plaintiff/appellee.

Before CHRISTIAN, Presiding Judge, O'BRIEN, District Judge, and FINCH, Territorial Court Judge.

## OPINION

PER CURIAM.

Before us today is this novel question: does an executive pardon of one convicted for assault, which by its terms purports to expunge the judicial records of the conviction, and because of which an appeal is mooted, preclude the collateral use of the conviction in a subsequent civil matter? For the following reasons we hold that it does not, and we affirm the trial court.

## I. FACTS AND PROCEDURAL BACKGROUND

The defendant/appellant, Charles S. Waggoner, prosecutes this appeal from an interlocutory order of the territorial court granting the plaintiff/appellee, Ulysses A. Lettsome, partial summary judgment on the issue of liability. Jurisdiction is predicated upon 28 U.S.C. § 1292(b) as applied in this Court by 5 V.I.C.App. V Rule 20.15 (1985). The lower court certified that the question involves a controlling matter of law upon which there are substantial grounds for disagreement. We accepted certification.

This case stems from the criminal matter of *Government of the Virgin Islands v. Waggoner*, Crim. No. F105/1981 (Terr.Ct. 1981). Waggoner was convicted of assault in the Third Degree, assaulting a police officer, in violation of 14 V.I.C. § 297. That conviction was affirmed by Chief Judge Christian sitting as a one judge appellate division of this Court. App. at 22–33. It was subsequently appealed to the Third Circuit.

In the interim, Lettsome, who was the assaulted police officer, filed this civil action below. However, before the issues were joined, former Governor Juan Luis pardoned Waggoner. App. at 50. That pardon was based upon his rehabilitation. It also purported to expunge the records of conviction in both the territorial court, and the appellate division of this Court.[1]

Thereafter, the Third Circuit dismissed Waggoner's appeal as moot. App. at 67. It did not, however, order this Court or the

---

1. The Waggoner pardon states in relevant part:
 ... NOW, THEREFORE, I JUAN LUIS, Governor of the Virgin Islands, by virtue of the power vested in me by Section 11 of the Revised Organic Act of the Virgin Islands, do hereby PARDON the said Charles S. Waggoner from the offenses above-described, for which he was found guilty and was sentenced by the Court as hereinabove indicated, and I do hereby expunge the aforesaid conviction from the records of the Territorial Court, the District Court and the Department of Public Safety, and direct that Charles S. Waggoner be fully and unconditionally absolved from all legal consequences of said offenses and convictions therefor, direct or collateral, including any punishment by the Territorial Court or the District Court of the Virgin Islands.
 App. at 51.

territorial court to vacate the judgments against Waggoner and to enter orders dismissing the case, despite Waggoner's motion before the Circuit seeking precisely that relief.

Subsequently, in this civil matter, the territorial court held that Waggoner was estopped from relitigating the facts established by the criminal conviction. Because of the estoppel, it entered partial summary judgment on the issue of liability in favor of Lettsome. App. at 15.

In this appeal, Waggoner argues (1) it was error to give preclusive effect to a criminal judgment where full appellate review was unavailable; (2) that the lower court failed to consider whether application of principles of offensive collateral estoppel was unfair under the circumstances of this case, and that it abused its discretion by enforcing issue preclusion against Waggoner; and (3) that the territorial court violated principles of the doctrine of separation of powers by not enforcing the provisions of the pardon expunging the judicial records. Because we find no merit in any of Waggoner's contentions, we affirm.

2. Comment (e) to § 85 explains in relevant part:
... [A]t an earlier period in the development of res judicata doctrine, the "mutuality" requirement was an obstacle to applying issue preclusion in favor of such a third party. That is, since the third party would not have been bound in his civil action if the prosecution had resulted in an acquittal, under the mutuality rule it would follow that the third party could not take advantage of the issue determined in a conviction. However, long before the mutuality rule was repudiated in civil cases, well reasoned decisions had extended the rule of preclusion to operate in favor of third persons where the first action is criminal and the second is civil. This result corresponds to the repudiation of the mutuality rule where the successive actions are both civil. See § 29.

3. Section 29 provides in relevant part:
A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to relitigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which consideration should be given include those enumerated in § 28 and also whether:

## II. DISCUSSION

### A. Preclusive Effect of Judgment Mooted on Appeal

Application of principles of offensive collateral estoppel is governed in this jurisdiction by the *Restatement (Second) Judgments* § 85.2(a). *Bower v. O'Hara,* 759 F.2d 1117 (3d Cir.1985).

Section 85 provides:

With respect to issues determined in a criminal prosecution:

(2) A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action:

(a) Against the defendant in the criminal prosecution as stated in § 29.

*Id.* at § 85.[2]

Section 29 lists several factors a court ought consider before it applies issue preclusion.[3] However, it first directs us to the general rule as stated in Section 27 and exceptions to that rule as stated in Section 28. Section 27 reads:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determina-

(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;

(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;

(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

tion is conclusive in a subsequent action between the parties, whether on the same or a different claim.

The exception which Waggoner puts at issue here is stated in Section 28(1):

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; ...

Comment a explains:

The exception in Subsection (1) applies only when review is precluded as a matter of law. It does not apply in cases where review is available but is not sought.

. . . . .

Note: With respect to controversies that have become moot, it is a procedural requirement in some jurisdictions, in order to avoid the impact of issue preclusion, that the appellate court reverse or vacate the judgment below and remand with directions to dismiss.[4]

Waggoner admits that on its face, § 27 as applied by § 29 and § 85 would preclude him from relitigating the facts of his as-

sault; but he asserts that the exception of section 28(1) for cases where review is precluded as a matter of law applies to his mooted appeal. Lettsome counters that the note to comment (a) negates the exception in this case.

Our research has uncovered no Third Circuit criminal case interpreting this situation. However, we find the civil matter of *Klein v. California,* 586 F.2d 250 (3d Cir. 1978) instructive. In that case, the Circuit noted that the usual disposition of a case mooted on appeal is for the appellate court to remand the case with directions to dismiss the action but it continued "... [i]f the original action is not dismissed, the prior district court judgment would be accorded res judicata effect." *Id.* at 255 (citing, *Munsingwear, supra* ).

In this case, the Circuit's dismissal left the judgments below standing, despite Waggoner's motion asking that court to remand with instructions to vacate this Court's and the territorial court's judgments.[5] We presume, therefore, by its language in *Klein,* that the Circuit contemplated the rule recognized by the note to Section 28's comment a. As a result, we believe Waggoner's reliance on Section 28's exception to be misplaced.[6] Thus, since the court did not order the judgments vacated, the rule of Section 85 can be properly ap-

**4.** The rule stated in the note to comment (a) follows from the Supreme Court decision of *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). There the Court held that it was the duty of the courts of appeals in civil matters to reverse or vacate lower courts' judgments, and remand with directions to dismiss, in cases which the controversy has become moot and a motion to vacate has been made. *Id.* at 39–40, 71 S.Ct. at 107. *See also Great Western Sugar Co. v. Nelson,* 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979). The Third Circuit has recognized this practice. *See Clark v. Cohen,* 794 F.2d 79 (3d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 459, 93 L.Ed.2d 404 (1986). However, where the matter is a criminal action, the procedure is not mandated, and it appears that only the Fifth and Eleventh Circuits have explicitly adopted it. *In Re Ghandtchi,* 705 F.2d 1315, 1316 (11th Cir. 1987); *United States v. Miller,* 685 F.2d 123 (5th Cir.1982); *United States v. Sarmiento Rozo,* 592 F.2d 1318, 1321 (5th Cir.1979).

**5.** At oral argument, it was brought out that Waggoner had moved the Circuit to vacate the judgments below. *See Government of the Virgin Islands v. Waggoner,* D.C.Crim. No. 82/154 (D.V.I. Nov. 30, 1984). We take judicial notice of that record. *See e.g., ITT Rayonier, Inc. v. United States,* 651 F.2d 343, 345 n. 2 (5th Cir. 1981).

**6.** Waggoner relies on the Third Circuit Virgin Islands case of *Lewis v. Thomas,* 489 F.2d 700, 10 V.I. 649 (3d Cir.1973) where the court, citing the first restatement, held that a lower court's order mooted on appeal can not be given preclusive effect. *Id.* at 701. Because it refers to the first restatement that opinion is not controlling. *See e.g., Bower v. O'Hara,* 759 F.2d 1117 (3d Cir.1985) (applying *Restatement (Second) of Judgments,* in the Virgin Islands.)

plied here, and the considerations of Section 29 are relevant.

## B. *Issue Preclusion Below*

■ Waggoner argues, citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), that the lower court erred as a matter of law in failing to consider the unfairness of allowing preclusion in this case.[7] We note, however, that the trial court's fourteen page opinion is thorough and comprehensive. Its consideration of these issues demonstrates the court's understanding of the competing interests. *See* Op. at 1–14. For example the court wrote:

> Here, the defendant, by use of the pardon power seeks to deny the commission of acts that he was found to have committed beyond a reasonable doubt. To deny the plaintiff the collateral use of a fact already proven beyond a reasonable doubt in this court's opinion, would be to turn the doctrine of collateral estoppel on its head and would defy elemental notions of fairness, judicial efficiency and common sense ...

Op. at 9–10.

Thus, we find this ground meritless. Nevertheless, Waggoner asserts that the trial court's decision was an abuse of discretion under *Parklane.* The *Parklane* court applied three considerations: incentive to litigate in the prior action; prior inconsistent judgments; availability of procedural opportunities in subsequent actions not available in first. 439 U.S. at 332, 99 S.Ct. at 652. We consider these factors along with those announced by the Circuit in *Bower,*[8] and the Restatement's Section 29. *See, supra* at note 3.

First, the issue here is exactly the same as in Wagonner's criminal action, i.e., the fact of the assault against Lettsome. Second, the issue was clearly litigated in the criminal action. Third, the judgment of the criminal division of the territorial court was final, and fourth, it was valid.

Clearly Waggoner had incentive to strenuously litigate the matter in the prior criminal action. Moreover, on a procedural basis Waggoner had greater protection in the criminal action because the Government's burden was to prove its case beyond a reasonable doubt. In addition, there are no inconsistent judgments. Indeed, the criminal matter had one level of appellate review. Chief Judge Christian's eleven page opinion affirming the conviction indicates that Waggoner's contentions on appeal were seriously considered, but rejected. App. at 22–32.

Furthermore, we fail to see how issue preclusion in this case in incompatible with the administration of justice. Waggoner's conviction was not based on a plea or compromise verdict as was the case in *Bower.* He has given us no other compelling reason why this issue should be litigated once again and, therefore, we fail to see why he deserves another day in court to contest facts which one jury already found beyond a reasonable doubt.

All this being readily apparent, we find the trial court did not abuse its discretion in applying issue preclusion in this matter. If anything, this is an excellent example of when issue preclusion is appropriate given that the factual contention is simple: did Waggoner assault Lettsome? Waggoner's criminal trial was a sufficiently fair and full opportunity at which this issue was contested.

---

7. In *Parklane,* the Court gave federal courts broad discretion to determine when offensive collateral estoppel should be applied. *Id.* 439 U.S. at 331, 99 S.Ct. at 651. It emphasized, however, that the ability to receive a full and fair opportunity to litigate claims in the prior action is important. *Id.* at 332, 99 S.Ct. at 652.

8. In *Bower,* the Circuit reemphasized that the following considerations are essential before issue preclusion in this jurisdiction can be enforced:

1) issue sought to be precluded must be same as that involved in prior action;
2) issue must have been actually litigated;
3) it must have been determined by a valid and final judgment;
4) that determination must have been essential to the prior judgment.
759 F.2d at 1125 (citation and quotation omitted).

## C. Effect of a Pardon

 Waggoner, nevertheless, asserts that his pardon relieved him of the collateral consequences of his conviction such as issue preclusion. We disagree.

Black's Law Dictionary defines a Pardon as:

An act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. An act of grace from governing power which mitigates the punishment the law demands for the offense and restores the rights and privileges forfeited on account of the offense.

Black's Law Dictionary 1002 (5th Ed.1979) (citation omitted). Modern cases have held that a pardon simply restores a person's civil rights and eliminates the collateral consequences stemming from the loss of those civil rights. *Bjerkan v. United States*, 529 F.2d 125, 127–128 (7th Cir.1975) (citing *Carlesi v. New York*, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914)).

As the *Bjerkan* court wrote:

The fact of conviction after a pardon cannot be taken into account in subsequent proceeding. However, the fact of the commission of the crime may be considered.

*Id.* at 128 n. 2. *See also United States v. Moroney*, 373 F.2d 908, 910 (3d Cir.1967) (applying Maryland statute) (pardon obliterates the conviction as though the offense had not been committed only if it makes known that the grantee has been conclusively shown to have been convicted in error).

This view arises from the *Carlesi* court's dicta that a state may not take cognizance of the offense pardoned in any manner which constitutes punishment. 233 U.S. at 57–58, 34 S.Ct. at 577–78 (facts of pardoned conviction may be used to enhance sentencing under habitual offender statute). We do not believe that it can seriously be argued that recognition of the facts essential for the conviction in a subsequent civil proceeding constitutes punishment.[9] *See e.g., Crossgold v. Supreme Court of Illinois*, 557 F.2d 122 (7th Cir.1977) (pardon does not wipe out moral turpitude inherent in factual predicate, thus it does not relieve an attorney from discipline); *Stone v. Oklahoma Real Estate Comm.*, 369 P.2d 642, 646 (Okl.1962) (pardon does not preclude use of prior conviction for purpose of denying real estate license).

Since a pardon merely restores the grantee's civil rights, the type of punishment referred to in the *Carlesi* decision means the deprivation of rights such as the right to vote, serve on a jury, the right to work in a certain profession. *Bjerkan, supra* at 126–128. Thus, Waggoner's assertion at oral argument that an award of punitive damages amounts to punishment within the meaning of *Carlesi*, is meritless.

Waggoner makes much of the language of two 19th century Supreme Court cases which suggest that a pardon wipes out all the collateral consequences of a conviction. *See In Re Garland*, 77 U.S. (4 Wall) 333, 18 L.Ed. 366 (1867); *Carlisle v. United States*, 83 U.S. (16 Wall) 147, 21 L.Ed. 426 (1873). Yet even the *Garland* decision refers solely to restoration of the person's civil rights.[10] 4 Wall at 381. Moreover, as

---

**9.** As early as 1893, the Supreme Court, concerning the scope of that power vis-a-vis civil matters, wrote:

An executive may pardon and thus relieve a wrongdoer from the punishment the public exacts for the wrong, but neither the executive nor legislature can pardon a private wrong or relieve the wrongdoer from civil liability to the individual he has arranged.

*Angle Chicago v. St. Paul, Minneapolis & Ohara R.R. Co.,* 151 U.S. 1, 19, 14 S.Ct. 240, 247, 38 L.Ed. 55 (1893); *see also* 67A C.J.S. Pardon & Parole § 18 at 22, 23 (1978).

**10.** The debate as to the effect of a pardon is evidenced by Williston's *Does a Pardon Blot Out Guilt?* 28 Harv.L.Rev. 647, 653 (1915). Courts following that article cite to 3 prevalent views:

The first view holds that a pardon obliterates both conviction and guilt which places the offender in a position as if he or she had not committed the offense in the first place. The second view is that the conviction is obliterated but guilt remains. The third view is that neither the conviction nor guilt is obliterated.

*State v. Bachman*, 675 S.W.2d 41, 49 (Mo.App. 1984). Our research has found no modern case

even Waggoner admits, the true battle in the case at bar is not whether the pardon relieves him of his civil liability, but whether the pardon can expunge this Court's or the territorial court's judicial records so that the trial court could not take judicial notice of the facts represented in those records.

### D. *Expungement of Record*

■ A pardon carries no more authority than that imposed by statute or case law. *Bachman, supra* at 49. We have found no case law granting the governor the power to expunge judicial records, and a reading of the Revised Organic Act does not imply such power. *See* 48 U.S.C. 1591.[11]

■ Federal courts do have inherent equitable power to expunge records; *United States v. McMairs*, 540 F.2d 387 (8th Cir. 1976), and two local statutes create the judicial power to expunge in certain circumstances, 5 V.I.C. § 2531 (court may expunge in juvenile cases); 5 V.I.C. § 3711(c) (probation without conviction), however, nothing we have found suggests a basis for the governor exercising such power. Absent a statutory ground; *see e.g., People v. Glisson*, 44 Ill.App.3d 108, 3 Ill.Dec. 35, 358 N.E.2d 35 (Ill.App.1976), or where the pardon was based upon innnocence of the accused, the cases have held that there is no authority to expunge a record merely because of a pardon. *Bachman, supra* at 41 (citing *Cohen v. Barger*, 11 Pa.Comwlth 617, 314 A.2d 353 (Pa.Comwlth Ct. 1974)).

■ Thus, we find no basis in law for Governor Luis' action. We, therefore, hold that to the extent the pardon seeks to expunge the records of this Court or the territorial court, it is null and void.[12] As a

result absent a motion by a party, and an order granting such a motion, the judicial records of a conviction remain. It was, therefore, not error for the territorial court to take judicial notice of Waggoner's conviction and the facts therein.[13]

### III. CONCLUSION

For the foregoing reasons, the order of the trial court granting Lettsome partial summary judgment is affirmed.

seriously adhering to view 1 except where the pardon is based upon innocence. *See Moroney, supra.*

**11.** That statute provides in relevant part ... He [Governor] may grant pardon and reprieves and remit fines and forfeitures for offenses against local laws ... 48 U.S.C. § 1591.

**12.** Waggoner's separation of powers argument is also without merit. It can, as Lettsome argued, be also asserted that the governor's attempt to expunge the records of the judicial branch is the act which violates these principles.

However, we do not see how the territorial court could be said to have stepped on the prerogatives of the executive branch where the governor has no such prerogatives vis-a-vis judicial records.

**13.** Waggoner's argument that Fed.R.Evid. 609(c) precludes use of his prior conviction in this matter is also meritless. It is clear that this rule involves impeachment only. *See* advisory notes on Rule 609(c). It does not refer to preclusion of facts found in a prior action.